Cristina Perez Hesano (#027023)
**PEREZ LAW GROUP, PLLC**
7508 North 59th Avenue
Glendale, Arizona 85301
Telephone: (602) 730-100
Fax: (602) 612-6266
cperez@perezlawgroup.com

*Additional Counsel Below*
*Counsel for Plaintiff and the Class*

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Paul M. Fritts, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

National Wellness Centers; National Wellness Providers; Darrell Powell, individually; Evolution Medical & Aesthetics, PLLC; Susan Kelly, FNP, BC-C, individually; Ashly Yount, FNP-BC, individually; and Karl Lorenzo Brown, M.D., MPH, MBA, individually,

*Defendants*.

Case No. _____________

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Paul M. Fritts ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants National Wellness Centers, National Wellness Providers, Darrell Powell, Evolution Medical & Aesthetics, PLLC, Susan Kelly, Ashly Yount, and Karl Lorenzo Brown, M.D. (collectively, "Defendants"), and alleges as follows. The allegations are based on Plaintiff's personal knowledge as to himself and his

own acts, and on information and belief, including the investigation of Plaintiff's counsel, as to all other matters.

## INTRODUCTION

1. This action arises from Defendants' coordinated, deceptive marketing and sale of unproven, non-FDA-approved human cellular and tissue-based product ("HCT/P") injections to Tennessee consumers, including elderly and disabled consumers on fixed incomes, as a "regenerative," "miraculous," and life-changing cure for chronic pain, joint injuries, arthritis, and other conditions.

2. Defendants execute their scheme through a uniform multi-step process: (a) bulk-mailed flyers offering elderly residents a "free steak dinner" in exchange for sitting through a sales seminar; (b) high-pressure dinner-seminar presentations featuring fabricated celebrity endorsements (Michael J. Fox, Tiger Woods, and Peyton Manning) and promises that injections will "rebuild cartilage," "regenerate cells," and make consumers feel like "a new man"; (c) same-day or next-day in-home sales calls structured to manufacture artificial urgency and extract credit-card or financing commitments before the consumer has any meaningful opportunity to investigate the claims; and (d) follow-on in-home injections administered by licensed nurse practitioners borrowed from local medical practices and operating under medical protocols supervised by Defendants' Chief Medical Officer.

3. The HCT/P injections that Defendants market and sell are not approved by the United States Food and Drug Administration ("FDA") to treat chronic pain, arthritis, calcaneal or other fractures, joint injuries, or any of the conditions Defendants market them to treat. They are, by definition, experimental and investigational. The FDA has issued a public consumer

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

warning stating that "if you are being charged for [regenerative medicine] products or offered these products outside of a clinical trial, you are likely being deceived and offered a product illegally."

4. There is no reliable peer-reviewed scientific evidence that the injections Defendants sell rebuild cartilage, regenerate joint tissue, or provide any benefit superior to less expensive, FDA-approved alternatives. Independent clinical trials, including studies conducted at the Mayo Clinic and Duke University, have shown no statistically significant difference between HCT/P injections and saline or corticosteroid injections for the treatment of joint pain and osteoarthritis.

5. Defendants deliberately concealed these material facts from Plaintiff and the class he seeks to represent. No part of Defendants' marketing presentation, in-home sales pitch, or Therapy Agreement disclosed: (a) the lack of FDA approval for the conditions advertised; (b) the absence of reliable scientific consensus supporting the claimed benefits; (c) the FDA's published consumer warning concerning deceptive regenerative-medicine marketing; or (d) the existence of cheaper, accepted alternative treatments.

6. Defendants target elderly Tennessee residents — many of whom are on fixed incomes, fearful of invasive surgery, and especially susceptible to "regenerative" cure-all promises — through geographically selected mass mailings, dinner seminars at family restaurants in small communities, and in-home sales calls timed and choreographed to bypass deliberative consumer decision-making.

7. Plaintiff Paul M. Fritts is a Sweetwater, Tennessee resident living on Social Security Disability Insurance benefits as his sole source of income. He suffers from a calcaneus

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

(heel) fracture sustained when he fell from a roof, which left him permanently disabled. He was specifically targeted by Defendants' mailing campaign, lured to a free steak dinner sales seminar in Athens, Tennessee on November 18, 2024, subjected to a manipulative in-home sales call at his residence on December 11, 2024, and induced to charge $9,527.00 across the only two credit accounts on which he had remaining capacity — a Discover card and a CareCredit/Synchrony Bank revolving line.

8. More than ten months after receiving his injections, Plaintiff has experienced no improvement. He now suffers increased chronic foot pain, new and persistent symptoms of profuse sweating, depression, and chronic fatigue, and has been left financially devastated — having paid Defendants approximately $9,527.00, plus financing costs, and ruined his credit — as a direct result of Defendants' fraudulent scheme.

9. Plaintiff brings this action on behalf of himself and a class of similarly situated Tennessee consumers to recover the sums paid to Defendants, to obtain declaratory and injunctive relief halting Defendants' ongoing deceptive marketing in Tennessee, and to vindicate the rights of the Tennessee consumers whom Defendants targeted and deceived.

**PARTIES**

10. Plaintiff Paul M. Fritts is a natural person, citizen of the United States, and resident of Monroe County, Tennessee. Plaintiff was born on or about April 16, 1960, and at all relevant times has been an "elderly adult" within the meaning of Tenn. Code Ann. §§ 71-6-101 *et seq.* and a "senior citizen" for purposes of the Tennessee Consumer Protection Act. Plaintiff is retired on disability and receives Social Security Disability Insurance benefits as his sole source of income.

P
PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

11. Defendant National Wellness Centers ("NWC") is, on information and belief, a for-profit business organization with a principal address of 9700 N. 91st Street, Suite A-115, Scottsdale, Arizona 85258. NWC markets, sells, and arranges the in-home administration of HCT/P injection programs directly to consumers nationwide, including in Tennessee, through mailed flyers, dinner seminars, and in-home sales presentations. NWC's ownership, governance, and corporate form are particularly within Defendants' knowledge.

12. Defendant National Wellness Providers ("NWP") is the medical staffing and clinical-operations arm of NWC. On information and belief, NWP shares common ownership, management, offices, and personnel with NWC. NWP deploys licensed nurse practitioners to administer HCT/P injections to consumers in their homes; designs and disseminates the medical protocols, post-injection instructions, and follow-up procedures used in the program; and operates under the direction of Chief Medical Officer Defendant Karl Lorenzo Brown, M.D. NWC and NWP held themselves out to Plaintiff and the Class as a unified enterprise under a single brand and a single set of "National Wellness Providers" clinical personnel.

13. Defendant Darrell Powell is, on information and belief, an individual who acts as a sales representative, agent, or contractor of NWC. Powell personally: (a) conducted the November 18, 2024 dinner-seminar presentation at the Western Sizzlin restaurant in Athens, Tennessee that Plaintiff attended; (b) appeared at Plaintiff's home in Sweetwater, Tennessee on December 11, 2024 and conducted the in-home sales consultation that produced the Therapy Agreement at issue; (c) made the specific material false representations and material omissions detailed below directly to Plaintiff; (d) collected Plaintiff's credit card and CareCredit

information and processed the $9,527.00 transaction on behalf of NWC; and (e) executed the Therapy Agreement on behalf of NWC as the "submitted by" representative.

14. Defendant Evolution Medical & Aesthetics, PLLC ("Evolution Medical") is, on information and belief, a Tennessee professional limited liability company with offices in Rogersville, Tennessee. Evolution Medical is owned and operated by Defendants Susan Kelly and Ashly Yount and served as the on-the-ground clinical provider that administered HCT/P injections to Plaintiff and, on information and belief, to other Tennessee class members.

15. Defendant Susan Kelly, FNP, BC-C is an individual, a family nurse practitioner licensed in Tennessee, and a co-owner of Evolution Medical. Kelly personally attended Plaintiff's home on January 15, 2025 and administered an HCT/P injection into Plaintiff's left foot together with an intravenous infusion into his right arm. Kelly is identified on Plaintiff's post-treatment instructions and is responsible for obtaining or failing to obtain informed consent from Plaintiff prior to administering the injection.

16. Defendant Ashly Yount, FNP-BC is an individual, a family nurse practitioner licensed in Tennessee, and a co-owner of Evolution Medical. Yount personally attended Plaintiff's home on January 15, 2025 and participated in the administration of Plaintiff's injection. Yount is identified by name and credentials in the NWC "National Wellness Providers" roster of clinicians as the designated provider for Tennessee. Yount is identified on Plaintiff's post-treatment instructions and is responsible for obtaining or failing to obtain informed consent from Plaintiff.

17. Defendant Karl Lorenzo Brown, M.D., MPH, MBA (NPI 1649497702) is, at all relevant times, the Chief Medical Officer of NWC and NWP. Dr. Brown publicly markets

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

himself in NWC's consumer-facing literature as the senior physician executive responsible for the clinical operations of the stem-cell injection program. By holding himself out as the chief medical authority for the program, Dr. Brown lent his medical license, credentials, and reputation to NWC's marketing and operations; designed, approved, ratified, and supervised the medical protocols, in-home administration procedures, post-treatment instructions, and clinician roster used to administer HCT/P injections to Plaintiff and the Class; and knew or should have known that the marketing and informed-consent practices used to obtain consumer agreement to those treatments were materially false and misleading.

## JURISDICTION AND VENUE

18. This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). This is a class action in which: (a) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; (b) any member of the putative class is a citizen of a state different from any Defendant, satisfying the minimal-diversity requirement of 28 U.S.C. § 1332(d)(2)(A); and (c) the putative class consists of 100 or more members, as required by 28 U.S.C. § 1332(d)(5)(B). Defendant National Wellness Centers is a citizen of Arizona. Plaintiff Fritts is a citizen of Tennessee and the putative class members are citizens of numerous different states. The aggregate amount in controversy exceeds $5,000,000 based on the number of class members, individual damages in the thousands or tens of thousands of dollars per member, plus punitive damages, attorneys' fees, and the value of declaratory and injunctive relief. Neither the "home state" exception of 28 U.S.C. § 1332(d)(4)(B) nor the "local controversy" exception of 28 U.S.C. § 1332(d)(4)(A)

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

applies because fewer than two-thirds of the members of the putative class are citizens of Arizona, the state in which this action is filed.

19. This Court has personal jurisdiction over each Defendant consistent with the Due Process Clause of the United States Constitution and Arizona's long-arm statute, Ariz. R. Civ. P. 4.2(a), which extends to the fullest extent permitted by the Constitution. Defendants NWC and NWP are headquartered at 9700 N. 91st Street, Suite A-115, Scottsdale, Arizona 85258, and are therefore subject to general personal jurisdiction in this District as entities whose principal place of business is in Arizona. Defendant Karl Lorenzo Brown, M.D. is the Chief Medical Officer of NWC, an Arizona company, and on information and belief directed, supervised, and controlled the design and implementation of Defendants' HCT/P marketing, clinical, and sales protocols from Defendants' Arizona headquarters; Dr. Brown's tortious conduct giving rise to Plaintiff's claims was purposefully directed from Arizona and is sufficient to support specific personal jurisdiction in this District. Defendant Darrell Powell acted as the sales agent and contractor of NWC, an Arizona enterprise; Powell operated at the direction of, and in furtherance of, NWC's Arizona-based business, received compensation from NWC in Arizona, and his tortious conduct was a direct extension of the scheme designed and managed from Arizona. Defendants Evolution Medical, Susan Kelly, and Ashly Yount contracted with NWC and NWP to provide clinical services as the local operational arm of Defendants' Arizona-managed enterprise; operated pursuant to medical protocols designed, approved, and supervised by Dr. Brown in Arizona; were compensated by NWC from Arizona; were identified as designated Tennessee providers on NWC's Arizona-maintained clinician roster; and participated knowingly in a coordinated scheme orchestrated from Arizona. Each of

these Defendants' contacts with Arizona are the direct and proximate basis of the claims alleged herein.

20. Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

### A. The Limited Scientific and Regulatory Foundation for Stem Cell and HCT/P Therapy

21. Stem cells are sometimes referred to as the body's "master cells." They have two qualities that distinguish them from most other cells in the human body. First, stem cells are able to self-renew and produce more cells like themselves. Second, stem cells can differentiate into other cells that serve different purposes in the body.

22. Despite the considerable promise of stem-cell research, the actual clinical applications approved by the FDA remain narrow. The FDA has expressly warned consumers that "the only stem cell products that are FDA-approved for use in the United States consist of blood-forming stem cells (also known as hematopoietic progenitor cells) that are derived from umbilical cord blood," and that those products are approved "for use in patients with disorders that affect the production of blood" and "are not approved for other uses."

23. A stem-cell or HCT/P treatment that uses tissue not derived from umbilical cord blood for a blood-production disorder, or that targets a condition that does not affect the production of blood, is not FDA-approved. It is, by definition, experimental and investigational.

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

24. FDA officials have publicly stated, in connection with stem-cell and regenerative-medicine treatments outside the narrow approved uses, that "published data derived primarily from small, uncontrolled trials plus a few well-controlled, randomized trials have not reliably demonstrated the effectiveness of stem-cell treatments even in some of the most systematically studied conditions."

25. On June 3, 2021, the FDA published a consumer notice titled "Important Patient and Consumer Information About Regenerative Medicine Therapies," which expressly warns consumers: "Please know that if you are being charged for these products or offered these products outside of a clinical trial, you are likely being deceived and offered a product illegally." That guidance remains current.

26. The published peer-reviewed scientific literature does not support the proposition that HCT/P injections derived from umbilical-cord tissue — including "Wharton's Jelly" products of the type Defendants marketed to Plaintiff — rebuild cartilage, reverse osteoarthritis, heal calcaneal or other bone fractures, or provide outcomes superior to other non-surgical treatments for joint or musculoskeletal pain.

27. A clinical trial conducted at the Mayo Clinic observed no significant difference in reduced pain experienced by patients with osteoarthritis who received saline injections and those who received bone-marrow-derived stem cell injections. A separate clinical trial conducted at Duke University comparing mesenchymal stem-cell injections to corticosteroid injections for knee osteoarthritis likewise found no statistically significant superiority of stem-cell injections.



PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

28. Paul Knoepfler, a stem-cell expert at the University of California, Davis School of Medicine, has stated that "the best-case scenario [he has] heard is that stem cell injections seem to help [patients'] knees for a few months … and then they are right back where they started — but out $5,000, $10,000, or even $20,000 and still needing joint replacement."

29. The FDA has pursued civil and criminal enforcement actions against firms that manufacture, market, and sell unapproved stem-cell products, underscoring that these products are "drugs" under federal law and may not be legally sold without FDA approval. The Ninth Circuit has held that stromal vascular fraction and similar HCT/P products fall squarely within the Food, Drug, and Cosmetic Act's definition of a "drug," because they are "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease," and are marketed with the intent to treat medical conditions and affect the structure or function of the body. *United States v. California Stem Cell Treatment Ctr., Inc.*, 117 F.4th 1213, 1218–20 (9th Cir. 2024). The court rejected the argument that providers may evade FDA oversight by characterizing these offerings as the mere "practice of medicine," emphasizing that the FDA regulates the unlawful distribution of unapproved drug products regardless of how they are framed or marketed.

30. State attorneys general have likewise initiated consumer-protection enforcement actions against stem-cell clinics that deceptively market unapproved regenerative products directly to patients. For example, the Iowa Attorney General brought an enforcement action against stem-cell providers that "advertised and sold stem cell therapy to Iowans, falsely and deceptively claiming that their services could provide relief from pain and other symptoms caused by common medical conditions," targeting older consumers through mailers and

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

seminars promoting a "Life Without Pain!" *State ex rel. Bird v. Biologics Health, LLC*, Petition in Equity ¶¶ 1–3, No. EQCE089356 (Iowa Dist. Ct., Polk Cnty., Sept. 13, 2023).

**B. The Proliferation of Direct-to-Consumer Stem-Cell Providers**

31. Direct-to-consumer stem-cell and HCT/P providers have proliferated across the United States in recent years. From 2016 to 2024, the number of companies that provide services for regenerative medicine, including stem-cell therapies, increased globally from approximately 772 to over 1,550, competing in a market valued at approximately $297 billion in 2022.

32. In their haste to capture a slice of this booming market, providers "promote unproven and expensive treatments" by "making unsubstantiated claims." These claims mislead patients by portraying "an overly rosy picture of stem cell treatments" without providing "a fair balance of the risks, benefits, and limitations."

33. These providers often obfuscate the fact that the stem-cell therapies offered are neither FDA-approved nor backed by sufficient scientific evidence. Common tactics include testimonials from purported former patients whose stories cannot be verified, and recitation of celebrity endorsements designed to create a veneer of legitimacy and obscure the experimental nature of the treatments.

34. Many of these clinics "employ predatory practices by targeting patients with chronic or severe conditions that have complex or multifactorial etiologies." Because HCT/P treatments are not covered by insurance, individuals — frequently seniors on fixed incomes — must pay tens of thousands of dollars out-of-pocket. Unscrupulous providers exploit patients' understandable anxiety about surgical alternatives by promising a silver-bullet alternative.

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

### C. Defendants' Coordinated Scheme Targeting Elderly Tennessee Consumers

35. Defendants operate a uniform, integrated scheme to market and sell unapproved HCT/P stem-cell injections to elderly and disabled consumers, including in Tennessee. The scheme uses a recognizable, repeating four-step playbook: (a) bulk-mailed flyers to elderly residents in targeted geographic areas offering a free meal; (b) high-pressure dinner seminars featuring scripted false claims about FDA-approved cures and celebrity endorsements; (c) urgency-driven in-home sales calls structured to close transactions within twenty-four hours; and (d) follow-on in-home injections administered by locally licensed nurse practitioners borrowed from cooperating medical practices.

36. Defendants' marketing scheme is not patient-driven. It is sales-driven. Consumers are recruited not through referrals from treating physicians but through mass-mailed advertising; they are evaluated by sales representatives rather than physicians; the medical "qualification" step performed in the home consists of cursory questioning by a non-clinician; and prices are negotiated and credit cards are processed before any licensed clinician examines the patient.

### D. The November 18, 2024 Athens, Tennessee Dinner Seminar

37. On or about November 2024, NWC mailed flyers to residents in and around Sweetwater, Tennessee (Monroe County), advertising a "free steak dinner" at the Western Sizzlin restaurant in Athens, Tennessee on November 18, 2024. The flyers expressly targeted elderly persons with chronic pain, arthritis, and similar conditions and invited recipients to attend a presentation about "miraculous" stem-cell therapy.

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

38. Plaintiff received one of these flyers at his home in Sweetwater, Tennessee. Plaintiff and his wife attended the November 18, 2024 dinner seminar at Western Sizzlin in Athens, Tennessee.

39. Defendant Darrell Powell, acting on behalf of NWC and NWP, conducted the November 18, 2024 presentation. At the seminar, Powell and an NWC-prepared promotional video made, among other affirmative representations, the following material statements directly to Plaintiff and the other attendees:

a. That Defendants' stem-cell injections "regenerate new cells in the body" and "rebuild new cartilage in our bones" using "placenta from umbilical cords of newborn babies" made into a product called "Wharton's Jelly";

b. That Plaintiff would "wake up one day feeling like a new man" after receiving the injections;

c. That consumers would see benefits within "at least six (6) months" and that the effects of the treatment "can last anywhere from several months to multiple years";

d. That celebrities Michael J. Fox, Tiger Woods, and Peyton Manning had personally benefited from stem-cell therapy of the kind Defendants were offering;

e. That Powell himself had received the same therapy and that it had cured his own back pain; and

f. That consumers would experience increased energy and improved quality of life after treatment.

40. Each of the foregoing affirmative representations was materially false or materially misleading when made, as set forth in detail below. None of those representations

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

was qualified by any disclosure that the HCT/P injections were not FDA-approved for the conditions advertised, were not supported by reliable peer-reviewed scientific evidence, were the subject of an active FDA consumer warning, or were available only outside any clinical trial.

41. Powell deliberately manufactured artificial urgency by telling attendees, including Plaintiff, that any interested consumer would have to receive an in-home consultation from Powell himself the following day to "qualify" for treatment, because Powell purportedly had to travel immediately to other areas of the State for additional presentations already scheduled. This artificial urgency tactic was a uniform feature of Defendants' nationwide scheme and was designed to prevent consumers from conducting any independent investigation of the claims before committing to a five-figure transaction.

**E. The December 11, 2024 In-Home Sale at Plaintiff's Residence**

42. On or about December 11, 2024, Defendant Powell arrived unaccompanied at Plaintiff's home at 1001 Bennett Street, Sweetwater, Tennessee at approximately 9:00 a.m. The visit was a "home solicitation sale" within the meaning of Tenn. Code Ann. § 47-18-702: Powell solicited the consumer sale of services with an aggregate cash price of $9,527.00, at the buyer's residence, at a place other than the seller's place of business.

43. Powell conducted a sham "qualification" process consisting of cursory lay questioning of Plaintiff about his health, followed immediately by a price negotiation and a credit-card and CareCredit transaction. At no point during the in-home visit did any licensed physician examine Plaintiff, obtain his complete medical history, review imaging, or evaluate

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

whether HCT/P injection was an appropriate intervention for his calcaneal fracture or any other condition.

44. Powell repeated and amplified the affirmative representations made at the dinner seminar, and added additional inducements, including the following statements made directly to Plaintiff at his home:

a. That the two injections (a foot injection and an intravenous infusion) would relieve Plaintiff's chronic foot pain and improve his energy;

b. That Plaintiff could receive "repeat" treatments for long-term relief at "80%" off the cost in eleven months — a representation reflected in the written Therapy Agreement as: "NWC will offer treatment again at an 80% discount";

c. That Plaintiff's payment could be assembled across multiple credit accounts (bank funds, credit cards, and CareCredit financing); and

d. That the NWC home office would reduce the total purchase price by $300.00 specifically to fit Plaintiff's available credit — a representation calibrated to bring the transaction within the precise dollar capacity remaining on Plaintiff's two credit accounts.

45. Powell knew or should have known that Plaintiff was a sixty-one-year-old disabled retiree subsisting on Social Security Disability Insurance. Powell nonetheless calibrated the transaction to absorb every dollar of available credit on Plaintiff's only two open credit accounts — Plaintiff's Discover credit card and his CareCredit/Synchrony Bank account.

46. Plaintiff signed NWC's Therapy Agreement on December 11, 2024 (the "Therapy Agreement"), a true and correct copy of which is attached as Exhibit A and

incorporated by reference. The Therapy Agreement reflects: patient name “Paul Fritts”; “submitted by Darrell Powell”; date “12/11/24”; areas of treatment “Left foot & IV”, quantity “3”, price “$9527”; location “In Home”; and notation “Care credit charged 4500. Credit card charged for $5027.”

47. Powell ran both of Plaintiff’s credit accounts on December 11, 2024, charging $4,500.00 to CareCredit/Synchrony Bank and $5,027.00 to Plaintiff’s Discover credit card, for a total of $9,527.00.

48. The Therapy Agreement attached a one-page “Notice of Cancellation” (the “Notice of Cancellation”), a true and correct copy of which is attached as part of Exhibit A. The Notice of Cancellation purports to advise Plaintiff of a three-business-day right to cancel under home-solicitation-sale law, with cancellation deadline of “midnight of 12/16/24.”

49. The Notice of Cancellation, however, also contains a contradictory and coercive provision: “If the contract is cancelled after the three days right of recission, there will be a 50% fee of the contract value charged to the patient.” This 50%-of-contract-value cancellation penalty is imposed without any performance by Defendants and operates to suppress the very statutory cancellation right the Notice of Cancellation is supposed to convey. The clause is an unenforceable penalty and a deceptive practice that frustrates the consumer-protection purpose of the Tennessee Home Solicitation Sales Act, Tenn. Code Ann. §§ 47-18-701 et seq.

50. Neither Powell nor any other Defendant orally or in writing advised Plaintiff in clear and conspicuous terms of the statutory three-day right to cancel before he executed the Therapy Agreement and authorized the credit charges, and Defendants instead front-loaded the cancellation-penalty language so as to deter exercise of the cancellation right.

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

51. Nothing in Defendants' marketing at the dinner seminar, in the in-home sales pitch, in the Therapy Agreement, or in the Notice of Cancellation disclosed to Plaintiff: (a) that the HCT/P injections were not FDA-approved for the treatment of calcaneal fractures, chronic pain, arthritis, or any other condition advertised; (b) that there was no reliable scientific consensus supporting the claimed benefits; (c) that the FDA had publicly warned consumers about deceptive regenerative-medicine marketing outside clinical trials; (d) that less expensive accepted medical alternatives were available for Plaintiff's presenting condition; or (e) that the underlying injectable product is, on information and belief, marketed by its manufacturer for restricted, non-orthopedic uses only.

**F. The January 15, 2025 In-Home Injection**

52. On January 15, 2025, Defendants Susan Kelly, FNP, BC-C and Ashly Yount, FNP-BC, co-owners of Defendant Evolution Medical, arrived at Plaintiff's home in Sweetwater, Tennessee to administer the injections Plaintiff had purchased. Kelly and Yount were operating on behalf of, and pursuant to protocols supervised by, NWC, NWP, and Dr. Brown.

53. Kelly administered an HCT/P injection into Plaintiff's left foot and an intravenous infusion into Plaintiff's right arm. Yount participated in the administration of the injections. Kelly and Yount left Plaintiff with a "Post Instructions for Regenerative Therapy" document (the "Post-Injection Instructions"), a true and correct copy of which is attached as Exhibit B, identifying Evolution Medical, Susan Kelly, FNP and Ashly Yount, FNP as the providers.

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

54. Kelly and Yount did not, prior to administering the injections, disclose to Plaintiff: (a) that the HCT/P injection was not FDA-approved for the treatment of a calcaneal fracture, chronic foot pain, or any other condition Plaintiff was experiencing; (b) that the injection was experimental and investigational within the meaning of FDA guidance; (c) that no reliable peer-reviewed scientific evidence supported the marketing claims made by Powell and NWC at the dinner seminar and in the home; (d) that the FDA had publicly warned consumers about commercial HCT/P offerings outside clinical trials; or (e) any material information that would permit Plaintiff to provide informed consent to a non-FDA-approved, experimental procedure.

55. The Post-Injection Instructions purport to advise Plaintiff to drink large quantities of water; avoid alcohol, caffeine, anti-inflammatories, NSAIDs, steroids, fish oil, Vitamin E, and various other supplements for two weeks; take only acetaminophen for pain; and warn of a "healing crisis" of increased symptoms lasting up to ninety days. The Post-Injection Instructions affirmatively prohibit all use of heat or ice on the foot, thereby eliminating the standard, accepted, conservative pain-management options consumers would otherwise have used to manage the very pain they had paid Defendants to relieve, while consumers awaited promised results.

56. Kelly and Yount represented that they would follow up with Plaintiff at 48–72 hours, 2 weeks, 1 month, 2 months, and 3 months post-treatment. Plaintiff received only two of the promised follow-up calls. When Plaintiff later telephoned the office to raise a question and left a message, Defendants failed to return his call.

### G. The Failure of Treatment and Plaintiff's Damages

57. At five months post-injection, and continuing to the date of this Complaint, Plaintiff has experienced no improvement whatsoever from the HCT/P injection. To the contrary, Plaintiff has experienced increased chronic pain in his left foot, as well as new and persistent symptoms not present before the injection, including profuse sweating, depression, and chronic fatigue. Plaintiff was specifically promised increased energy, but is more fatigued today than before receiving the injection.

58. In reliance on Defendants' promises of improvement, Plaintiff purchased a zero-turn lawn mower in anticipation of supplementing his disability income with part-time landscaping work. Plaintiff lacks the energy and physical capacity to perform that work or to complete the home-improvement projects for which he has already purchased materials.

59. Plaintiff has paid Defendants $9,527.00, plus accruing financing costs on his Discover and CareCredit/Synchrony Bank accounts. Plaintiff has suffered damage to his credit, has been forced to attempt to close out the two credit accounts he used for the transaction, and has had to issue cease-and-desist notices to both creditors. Plaintiff has lost the use of his only remaining available credit. Plaintiff is now more depressed and feels betrayed and defrauded by Defendants.

**H. Defendants' Knowledge That Their Marketing Was Materially False**

60. At all relevant times, Defendants knew, or in the exercise of reasonable care should have known, that the affirmative representations in their marketing of HCT/P injections were materially false and misleading and that the omissions in their marketing concerned facts material to a reasonable consumer.

P
PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

61. Defendants are healthcare providers, healthcare marketers, and healthcare professionals that hold themselves out as competent to recommend, sell, and administer HCT/P injections. By virtue of that role, Defendants possessed, or in the exercise of reasonable care had access to: (a) the FDA's public consumer-warning statements concerning regenerative-medicine products; (b) the FDA's public position that injection of umbilical-cord tissue products into joints to treat osteoarthritis is not a homologous use within the meaning of 21 C.F.R. § 1271.10 et seq.; (c) the FDA's Untitled Letters and Warning Letters issued to comparable HCT/P clinics; (d) the peer-reviewed scientific literature reporting no significant benefit of stem-cell injections over saline or corticosteroid injections in the treatment of joint pain and osteoarthritis; and (e) the actual labeling and intended use of the HCT/P product that Defendants administer.

62. On information and belief, the consent or treatment-disclosure documentation Defendants required some patients to sign, particularly at in-clinic visits, expressly acknowledged that the injections are not FDA-approved for any condition Defendants advertised; that there is no universally accepted evidence that the use of these products is appropriate or more cost-effective or more beneficial than other accepted forms of treatment; that the procedure is experimental and investigational; that no guarantee of efficacy can be made; that more cost-effective and widely accepted alternatives exist; and that the product is, on information and belief, manufactured and distributed for limited uses only. None of those acknowledgments was disclosed to Plaintiff in Defendants' consumer-facing marketing or sales pitches. Defendants thus knew that the marketing through which they solicited Plaintiff and the



PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

Class materially diverged from the disclosures buried in internal documents and from Defendants' actual operational knowledge.

63. Defendants designed and disseminated their consumer-facing marketing with the specific intent that consumers would rely on it in deciding whether to purchase Defendants' HCT/P injection program. Defendants intended consumers to be unaware of the lack of FDA approval, the absence of reliable evidence of efficacy, and the existence of less expensive alternatives, because awareness of those facts would have caused reasonable consumers to decline to purchase.

**I. Plaintiff's Elder Status and Defendants' Continuing Course of Conduct**

64. Plaintiff was born on or about April 16, 1960. At the time of the November 18, 2024 dinner-seminar presentation, Plaintiff was sixty-four (64) years old. At the time of the December 11, 2024 in-home sales call and the January 15, 2025 injection, Plaintiff was sixty-one (64) years old. At all relevant times, Plaintiff was an "elderly adult" within the meaning of Tenn. Code Ann. § 71-6-102, an "elderly person" for purposes of consumer-protection law in Tennessee, and a "vulnerable adult" in light of his physical disability arising from his crushed calcaneus, his sole reliance on Social Security Disability Insurance, and the targeted nature of Defendants' marketing to him.

65. Defendants' acceptance of Plaintiff's payments, processing of his credit and financing transactions, and provision of services in January 2025 and thereafter occurred while Plaintiff was an elderly adult, in reliance on the materially false and misleading marketing claims Defendants had made through the dinner seminar, the in-home sales pitch, and the Therapy Agreement, none of which Defendants ever corrected.

66. Each instance in which Defendants continued to obtain control over the property of Plaintiff after Plaintiff turned sixty (60), while never correcting the materially false marketing through which they had originally induced Plaintiff to enter into the Therapy Agreement, constitutes a separate act of "theft" of property of an elderly adult "by fraud, deceit, [or] coercion" within the meaning of Tenn. Code Ann. § 71-6-120(b)(1).

**CLASS ACTION ALLEGATIONS**

67. Plaintiff brings this action individually and on behalf of the following Class:

> All persons who purchased stem-cell, HCT/P, and/or allograft injections from any Defendant, during the period beginning five years before the filing of this Complaint and continuing through the date of class notice (the "Class").

68. Plaintiff also brings this action individually and on behalf of the following sub-class (the "Elder Sub-Class"):

> All members of the Class who were sixty (60) years of age or older at the time of their dinner-seminar attendance, in-home consultation, execution of any Therapy Agreement with Defendants, or administration of any injection by Defendants.

69. Excluded from the Class and the Elder Sub-Class are: counsel for any party; Defendants; any entities in which any Defendant has a controlling interest; the judge to whom this action is assigned; and any member of the judge's staff or immediate family. The Class is identifiable through Defendants' business records, including their flyer-mailing distribution lists, dinner-seminar sign-in sheets, Therapy Agreement files, credit-card and CareCredit transaction records, and the clinical records maintained by NWP, Evolution Medical, and the nurse practitioners on NWP's roster.

***Numerosity – Fed. R. Civ. P. 23(a)(1)***

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

70. The members of the Class are so numerous that joinder of all members is impracticable. Defendants have acted in a similar manner as described herein and have violated the rights of hundreds or potentially thousands of individuals. Accordingly, the Class is sufficiently numerous to satisfy Rule 23(a)(1).

***Commonality – Fed. R. Civ. P. 23(a)(2)***

71. There are numerous questions of law and fact common to Plaintiff and the Class, the resolution of which will resolve issues central to the claims of every Class member, including but not limited to:

a. Whether Defendants engaged in a uniform scheme to market and sell HCT/P injections to elderly Tennessee consumers through the four-step playbook described above;

b. Whether Defendants' marketing represented HCT/P injections as FDA-approved, superior to traditional treatments, or supported by mainstream scientific evidence;

c. Whether those representations were false, deceptive, or misleading to reasonable consumers;

d. Whether Defendants failed to disclose that HCT/P injections were not FDA-approved for the conditions advertised;

e. Whether Defendants failed to disclose the FDA's public consumer warning regarding regenerative-medicine therapies;

f. Whether Defendants violated the Tennessee Home Solicitation Sales Act, Tenn. Code Ann. §§ 47-18-701 et seq., in connection with in-home Therapy Agreements;

g. Whether the 50%-of-contract-value cancellation penalty in Defendants' Notice of Cancellation is unenforceable and unconscionable;

h. Whether Defendants knowingly misled patients into purchasing unapproved HCT/P injections;

i. Whether Defendants were unjustly enriched by the sale of HCT/P injections to the Class;

j. Whether Defendants' acceptance of payments from elderly Class members after they reached age sixty (60) constitutes financial exploitation under Tenn. Code Ann. § 71-6-120;

k. Whether Defendants are jointly and severally liable as co-conspirators in the scheme; and

l. Whether Class members are entitled to compensatory damages, restitution, disgorgement, punitive damages, declaratory relief, injunctive relief, and attorneys' fees.

***Typicality – Fed. R. Civ. P. 23(a)(3)***

72. Plaintiff's claims are typical of the claims of the Class because they arise from the same course of conduct by Defendants — the uniform four-step scheme described above — and are based on the same legal theories. Plaintiff and each Class member purchased HCT/P injections in response to substantively identical marketing representations, in the context of substantively identical in-home sales presentations, on substantively identical Therapy Agreement and Notice-of-Cancellation forms.

P PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

***Adequacy – Fed. R. Civ. P. 23(a)(4)***

73. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to or in conflict with the interests of the Class. Plaintiff has retained competent counsel experienced in complex class-action and consumer-protection litigation, who are committed to vigorously prosecuting this action.

***Predominance and Superiority – Fed. R. Civ. P. 23(b)***

74. This action is also maintainable under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over questions affecting only individual Class members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The likelihood that individual Class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, the modest individual recoveries in comparison to the resources required, and the elderly character of the population Defendants targeted. All Class members were exposed to the same core misrepresentations through Defendants' uniform four-step marketing scheme, entered substantially identical Therapy Agreements with identical defective Notice-of-Cancellation provisions, and share common damages measured by the purchase price, financing costs, and consequential losses; individual issues (e.g., the amount each class member paid or the precise misrepresentations each heard) are manageable and do not defeat predominance under Ninth Circuit precedent.

## TOLLING

75. The limitations period applicable to Plaintiff's claims did not begin to run until

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

Plaintiff actually discovered, or in the exercise of reasonable diligence could have discovered, the facts constituting Defendants' violations. Plaintiff could not have discovered those facts at the time of contracting (December 11, 2024) or at the time of injection (January 15, 2025), because the very misrepresentations at issue — that the injections would produce regenerative results within "at least six (6) months" and that effects would "last anywhere from several months to multiple years" — were designed to defer any reasonable expectation of results until well after the transaction closed.

76. Plaintiff first reasonably concluded that Defendants' representations were false no earlier than approximately six months post-injection, in or around July 2025, when the promised results had not materialized and Plaintiff had received only two of the five warranted follow-up contacts. This action, therefore, is timely.

77. Independently, the limitations period is tolled by Defendants' fraudulent concealment of the cause of action. The Post-Injection Instructions Defendants provided affirmatively warned Plaintiff to expect a "healing crisis" of increased or worsened symptoms for up to ninety days post-injection — a representation Plaintiff now understands to be a further deceptive device designed to attribute any adverse post-injection experience to a benign transitional phase rather than to treatment failure, thereby delaying Plaintiff's recognition that the injections had produced no benefit and that he had been defrauded.

78. Defendants' concealment of the cause of action through this "healing crisis" narrative, combined with their failure to provide the promised follow-up care through which Plaintiff's concerns would otherwise have been addressed, prevented Plaintiff from discovering

the fraud within the time he otherwise might have done so. The limitations period is therefore tolled for the duration of Defendants' concealment.

## CLAIMS FOR RELIEF

Plaintiff brings the following claims for relief, individually and on behalf of the respective Class or Sub-Class, as noted below, and, where appropriate, as alternative claims:

## FIRST CLAIM FOR RELIEF

### Pattern of Unlawful Activity – Arizona Civil Racketeering (A.R.S. §§ 13-2301, 13-2312, 13-2314.04) (On behalf of Plaintiff and the Class)

79. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

80. Defendants NWC, NWP, Darrell Powell, Karl Lorenzo Brown, M.D., Evolution Medical & Aesthetics, PLLC, Susan Kelly, and Ashly Yount are and were, at all relevant times, persons associated in fact within the meaning of A.R.S. § 13-2301(D)(2), constituting an "enterprise" as defined by Arizona law (the "Enterprise").

81. The Enterprise operated through a coordinated, uniform four-step scheme to market and sell unapproved HCT/P injections to elderly and disabled consumers for financial gain, as alleged in detail above.

82. Defendants engaged in a "pattern of unlawful activity" for financial gain within the meaning of A.R.S. §§ 13-2301(D)(4) and 13-2314.04(T)(3), consisting of at least two related, continuous acts of racketeering committed for financial gain, the last of which occurred within five years of a prior act.

P PEREZ LAW GROUP, PLLC 7508 North 59th Avenue Glendale, Arizona 85301

83. The predicate unlawful acts include, without limitation: (a) a scheme or artifice to defraud within the meaning of A.R.S. § 13-2310 (racketeering under A.R.S. § 13-2301(D)(4)(b)(xiii)), through which Defendants knowingly obtained money and property from Plaintiff and the Class by means of the materially false representations, misleading omissions, and deceptive practices alleged herein.

84. Defendants knowingly obtained control over the property of Plaintiff and the Class through misrepresentation with intent to deprive them of it.

85. The pattern of unlawful activity satisfies A.R.S. § 13-2314.04(T)(3)(a) because: (a) the predicate acts share the same purposes (obtaining consumer payments for unapproved HCT/P injections), results (economic loss to elderly and disabled consumers), participants (the Enterprise and its members acting in concert), victims (elderly consumers recruited through the uniform four-step playbook), and methods of commission (mailed flyers, scripted seminars, in-home sales targeting fixed-income consumers, and clinician-administered injections); and (b) the predicate acts have been continuous over a multi-year period across multiple states, and the Enterprise presents a threat of continued unlawful activity absent judicial intervention.

86. Plaintiff and each Class member sustained reasonably foreseeable injury to their property by reason of the pattern of unlawful activity alleged herein, in the form of the purchase prices paid to Defendants, financing costs incurred, damage to credit, and the value of accepted alternative treatments foregone. Defendants' pattern of unlawful activity was the proximate and but-for cause of Plaintiff's and the Class's injuries.

87. Pursuant to A.R.S. § 13-2314.04(L), each individual Defendant is liable for the pattern of unlawful activity of the Enterprise because: NWC and NWP, as the principal

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

operators of the Enterprise, directly performed and directed the unlawful conduct; Dr. Karl Lorenzo Brown, M.D., as Chief Medical Officer, designed, authorized, and ratified the clinical protocols and medical representations central to the scheme; Darrell Powell directly performed multiple predicate acts as the Enterprise's sales agent; and Evolution Medical, Susan Kelly, and Ashly Yount authorized and ratified the scheme by administering injections pursuant to the Enterprise's materially false marketing without correcting the material omissions therein, and by accepting compensation from the Enterprise with knowledge of the scheme.

88. Pursuant to A.R.S. §§ 13-2314.04(A) and (D)(4), Plaintiff and the Class are entitled to treble damages in an amount up to three times their actual damages. Pursuant to A.R.S. § 13-2314.04(A), Plaintiff and the Class are entitled to their costs of suit, including reasonable attorneys' fees for trial and appellate representation. Pursuant to A.R.S. § 13-2314.04(D)(5), Plaintiff and the Class are entitled to prejudgment interest on actual damages. Pursuant to A.R.S. §§ 13-2314.04(B) and (D)(1)–(3), Plaintiff and the Class are entitled to injunctive relief, including orders restraining Defendants from continuing their pattern of unlawful activity, imposing restrictions on the Enterprise's future activities, and ordering dissolution or reorganization of the Enterprise. Plaintiff will serve notice and a copy of this pleading on the Arizona Attorney General within thirty (30) days of filing as required by A.R.S. § 13-2314.04(H).

## SECOND CLAIM FOR RELIEF

**Violation of the Arizona Consumer Fraud Act**
**(A.R.S. §§ 44-1521 et seq.)**
**(On behalf of Plaintiff and the Class)**

89. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.



PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

90. Defendants' HCT/P injection program constitutes "merchandise" within the meaning of A.R.S. § 44-1521(5), comprising the HCT/P injectable products (goods) and the associated consultation, administration, and follow-up services sold to consumers.

91. Defendants engaged in deception, deceptive acts and practices, fraud, false pretenses, misrepresentations, and concealment and suppression of material facts in connection with the sale and advertisement of their merchandise.

92. Defendants engaged in, at least and without limitation:

a. representing that the HCT/P injections would regenerate new cells, rebuild cartilage, reverse chronic conditions, and produce lasting pain relief, when those representations were materially false;

b. invoking the names of Michael J. Fox, Tiger Woods, and Peyton Manning as endorsers or beneficiaries of the same therapy;

c. failing to disclose that the HCT/P injections were not FDA-approved for any condition advertised;

d. failing to disclose the FDA's published consumer warning regarding deceptive regenerative-medicine marketing;

e. failing to disclose the absence of reliable scientific consensus supporting the claimed benefits;

f. deploying high-pressure in-home sales tactics designed to prevent deliberative decision-making; and

g. issuing a Notice of Cancellation embedding an unenforceable 50%-of-contract-value penalty designed to suppress statutory cancellation rights.

93. Defendants made each of the foregoing deceptive representations and omissions with the intent that Plaintiff and the Class would rely on them in deciding to purchase Defendants' HCT/P injection program, within the meaning of A.R.S. § 44-1522.

94. Plaintiff and each Class member actually relied on Defendants' deceptive representations and material omissions, and suffered ascertainable losses of money and property thereby, including the purchase prices paid, accruing financing costs, and damage to credit.

95. Plaintiff and the Class are entitled to recover their actual damages, the costs of this action, and reasonable attorneys' fees.

## THIRD CLAIM FOR RELIEF

**Violation of the Tennessee Consumer Protection Act**
**(Tenn. Code Ann. § 47-18-101 et seq.)**
**(On behalf of Plaintiff individually)**

96. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

97. The Tennessee Consumer Protection Act ("TCPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(a). The TCPA further enumerates specific deceptive practices, including but not limited to "representing that goods or services are of a particular standard, quality or grade" when they are not; "engaging in any other act or practice which is deceptive to the consumer or to any other person"; and engaging in any unfair or deceptive act, including those in violation of the Home Solicitation Sales Act. Tenn. Code Ann. § 47-18-104(b).

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

98. Defendants' marketing, sale, and provision of HCT/P injection services constitute "trade or commerce" within the meaning of Tenn. Code Ann. § 47-18-103(19). Defendants' acts and practices were directed at Tennessee consumers and occurred in Tennessee.

99. Plaintiff's claims under this Count are based on Defendants' entrepreneurial, marketing, and sales conduct — the design and content of their consumer-facing marketing, their sales seminars and in-home solicitations, their pricing and credit-financing tactics, and their consumer-contract forms — and not on the medical or professional judgment exercised in the rendition of any licensed professional service. The professional-services exemption in Tenn. Code Ann. § 47-18-111 therefore does not apply. See *Constant v. Wyeth*, 352 F. Supp. 2d 847 (M.D. Tenn. 2003); *Tucker v. Sierra Builders*, 180 S.W.3d 109 (Tenn. Ct. App. 2005).

100. Defendants engaged in unfair and deceptive acts and practices, including, with respect to Plaintiff and as alleged in detail above:

a. Representing that the HCT/P injections would regenerate new cells, rebuild cartilage, reverse chronic conditions, and produce lasting pain relief, when those representations were materially false;

b. Invoking the names of Michael J. Fox, Tiger Woods, and Peyton Manning as endorsers or beneficiaries of the same therapy when, on information and belief, none of those persons has endorsed Defendants' products or undergone the same treatment;

c. Employing mailed-flyer/dinner-seminar/next-day-in-home-sale tactics specifically targeting elderly and disabled consumers on fixed incomes;

d. Failing to disclose that the HCT/P injections were not FDA-approved for any condition advertised;

e. Failing to disclose the absence of reliable scientific consensus supporting the claimed benefits;

f. Failing to disclose the FDA's published consumer warning that being charged for regenerative-medicine products outside a clinical trial "you are likely being deceived and offered a product illegally";

g. Collecting full payment from Plaintiff before any treatment was administered, with no genuine refund mechanism;

h. Issuing a Notice of Cancellation containing an unenforceable, oppressive 50%-of-contract-value cancellation penalty calibrated to suppress the statutory three-day right of rescission;

i. Failing to comply with the form, disclosure, and refund requirements of the Tennessee Home Solicitation Sales Act, Tenn. Code Ann. §§ 47-18-701 et seq., which is itself a per se unfair or deceptive practice under the TCPA;

j. Exploiting the position of trust and confidence created by Defendants' holding-out of medical credentials, the in-home setting, and the presence of licensed nurse practitioners to overcome ordinary consumer deliberation; and

k. Engaging in a pattern of unfair conduct directed at senior citizens, including Plaintiff, an "elderly person" at the time of the transaction.

101. Each of the foregoing acts and practices was both deceptive and unfair within the meaning of the TCPA. Each had the capacity to deceive a reasonable consumer; each concerned

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

facts material to a reasonable consumer's decision whether to purchase; and each was designed to and did mislead Plaintiff.

102. Defendants' acts and practices were unfair within the meaning of the TCPA because they offended public policy as embodied in the FDA's consumer-protection guidance and Tennessee's Home Solicitation Sales Act; they were oppressive and exploited elderly and disabled consumers with limited means to detect or evaluate the falsity of the claims; they caused substantial consumer injury that consumers could not reasonably have avoided; and that injury was not outweighed by any countervailing benefit.

103. Plaintiff was actually deceived and was proximately injured as a direct and foreseeable result of Defendants' conduct. Plaintiff would not have purchased Defendants' HCT/P injection services, or would not have paid the prices he did, had Defendants' marketing accurately disclosed the lack of FDA approval, the absence of reliable evidence of efficacy, and the existence of less expensive accepted alternatives.

104. Plaintiff has suffered an ascertainable loss of money, including the $9,527.00 paid to Defendants, financing costs incurred on his Discover and CareCredit accounts, and consequential damages.

105. Defendants' conduct was willful and knowing, entitling Plaintiff to treble damages and reasonable attorneys' fees pursuant to Tenn. Code Ann. § 47-18-109(a)(3) and (e)(1). Defendants knowingly targeted Plaintiff in his home and exploited Plaintiff's status as an elderly adult and disabled person, entitling Plaintiff to enhanced damages and the additional civil-penalty enhancements that Tennessee courts award where the consumer is a senior citizen. See Tenn. Code Ann. § 47-18-104(b)(36); § 47-18-104(c).

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

**FOURTH CLAIM FOR RELIEF**

**Violation of the Tennessee Home Solicitation Sales Act**
**(Tenn. Code Ann. §§ 47-18-701 et seq.)**
**(On behalf of Plaintiff individually)**

106. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

107. The Tennessee Home Solicitation Sales Act ("HSSA") defines a "home solicitation sale" as a consumer sale of goods or services with a cash price of $25 or more, where the agreement or offer is solicited or made at a place other than the seller's place of business, including the buyer's residence. Tenn. Code Ann. § 47-18-702.

108. The December 11, 2024 transaction at Plaintiff's residence was a home solicitation sale within the meaning of § 47-18-702: the seller (NWC, through its agent Powell) solicited a consumer sale of services with a cash price of $9,527.00 at the buyer's residence in Sweetwater, Tennessee.

109. The HSSA grants the buyer of a home solicitation sale a right to cancel until midnight of the third business day after the date of the transaction, Tenn. Code Ann. § 47-18-703(a); requires the seller to deliver a clear, written, statutorily compliant notice of cancellation, § 47-18-704; and prohibits any waiver of the buyer's rights under the chapter, § 47-18-708.

110. Defendants violated the HSSA, with respect to Plaintiff, in at least the following ways:

a. Failing to deliver a notice of cancellation that complies with the form and content requirements of Tenn. Code Ann. § 47-18-704, including a clear, conspicuous, untainted statement of the right to cancel;

b. Commingling the statutory notice of cancellation with a coercive 50%-of-contract-value cancellation penalty designed to deter exercise of the statutory three-day right of cancellation — a de facto waiver of the buyer's rights forbidden by § 47-18-708;

c. Failing to inform Plaintiff orally or in writing of his right to cancel in a manner reasonably calculated to permit Plaintiff to exercise that right;

d. Processing Plaintiff's credit and CareCredit charges immediately at the time of contracting, thereby front-loading payment in a manner designed to make rescission impractical; and

e. Failing to refund all consideration tendered by Plaintiff and to take all other actions required upon timely cancellation.

111. Any violation of the HSSA is, by statute, a per se violation of the Tennessee Consumer Protection Act. Plaintiff is entitled to all remedies available under the TCPA, Tenn. Code Ann. § 47-18-109, including actual damages, treble damages for knowing violations, reasonable attorneys' fees, costs, and injunctive and declaratory relief, and to all common-law remedies of rescission, restitution, and consequential damages.

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

## FIFTH CLAIM FOR RELIEF

**Fraudulent Misrepresentation**
**(On behalf of Plaintiff and the Class)**

112. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

113. Defendants made the following affirmative statements of material existing fact to Plaintiff and to the Class, in uniform marketing materials, mailed flyers, dinner-seminar

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

presentations, in-home sales presentations, and the Therapy Agreement, as alleged in detail above:

a. That Defendants' HCT/P injections regenerate new cells in the body;

b. That Defendants' HCT/P injections rebuild new cartilage in bones;

c. That consumers will "wake up one day feeling like a new man" after treatment;

d. That benefits would be seen within six (6) months and that the treatment would last from several months to multiple years;

e. That celebrities including Michael J. Fox, Tiger Woods, and Peyton Manning had personally benefited from the same stem-cell therapy;

f. That consumers would have substantially more energy after treatment; and

g. That the program included a structured course of follow-up calls at 48–72 hours, 2 weeks, 1 month, 2 months, and 3 months post-treatment.

114. Each of the foregoing representations was false at the time it was made. Defendants' HCT/P injections do not rebuild cartilage, do not regenerate joint tissue, do not heal calcaneal fractures, and do not reverse osteoarthritis or chronic pain. The FDA has not approved the underlying product for any of the conditions Defendants marketed it to treat. The injections are not, by any reliable scientific measure, more effective than less expensive accepted non-surgical treatments. The follow-up program was not performed.

115. Defendants knew the foregoing representations were false at the time they were made, or made them with reckless disregard for their truth or falsity. Defendants possessed, or in the exercise of reasonable care had access to, the relevant FDA guidance, the peer-reviewed scientific literature, and the labeling and intended uses of the HCT/P product. The disclosures

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

Defendants make in internal patient documents demonstrate their actual knowledge of the falsity of their consumer-facing marketing.

116. Defendants made the foregoing representations with the intent that Plaintiff and the Class would rely on them in deciding whether to purchase Defendants' HCT/P injection services.

117. Plaintiff and the Class actually and reasonably relied on Defendants' representations. Defendants held themselves out as a healthcare enterprise with specialized knowledge concerning regenerative medicine; consumers do not ordinarily expect entities that hold themselves out as licensed-clinician-staffed healthcare providers to disseminate materially false claims about FDA approval and regenerative efficacy.

118. Plaintiff and the Class were injured by their reliance, including by paying tens of thousands of dollars for treatments that did not work, incurring financing costs, and forgoing or delaying accepted alternative treatments. Plaintiff and the Class are entitled to compensatory damages, punitive damages (because Defendants' conduct was intentional, willful, and reckless), and equitable relief.

## SIXTH CLAIM FOR RELIEF

### Fraudulent Concealment
### (On behalf of Plaintiff and the Class)

119. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

120. Defendants concealed material facts under circumstances creating a duty to disclose. As entities that hold themselves out as healthcare providers, licensed medical professionals, and entities with specialized regenerative-medicine expertise, Defendants

occupied a position of superior knowledge with respect to Plaintiff and the Class. Defendants additionally assumed a duty to disclose by making partial and misleading affirmative statements about FDA approval, efficacy, safety, and follow-up care that, without further disclosure, were materially false and misleading.

121. The material facts Defendants concealed include, among others: (a) that Defendants' HCT/P injections were not FDA-approved for the treatment of calcaneal fractures, osteoarthritis, joint pain, or any of the other conditions advertised; (b) that there was no reliable scientific consensus that the injections rebuild cartilage, regenerate tissue, or are more effective than less expensive accepted alternatives; (c) that the FDA had publicly warned consumers about deceptive marketing of regenerative-medicine and HCT/P therapies outside narrow approved uses; (d) that the underlying product is, on information and belief, marketed for limited non-orthopedic uses only; and (e) that the celebrity endorsements invoked were unverified and, on information and belief, fabricated.

122. Defendants intentionally concealed those facts in their pre-purchase marketing with the purpose of inducing Plaintiff and the Class to purchase Defendants' HCT/P injection services. Defendants knew or had reason to believe that disclosure of those facts would have caused reasonable consumers to decline to purchase.

123. Plaintiff and the Class justifiably relied on the absence of disclosure of contrary facts in deciding to purchase, and suffered damages thereby. Plaintiff and the Class are entitled to compensatory damages, punitive damages, rescission, restitution, and equitable relief.

P
PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

## SEVENTH CLAIM FOR RELIEF

### Fraudulent Inducement
### (On behalf of Plaintiff and the Class)

124. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

125. Defendants made affirmative misrepresentations of material existing fact, and concealed material existing facts, with the intent of inducing Plaintiff and the Class to enter into Therapy Agreements with NWC and associated credit-card and CareCredit/Synchrony Bank financing arrangements.

126. Defendants' misrepresentations and concealments were extrinsic to, and predated, the Therapy Agreements they induced. They include the marketing claims and material omissions detailed above, all of which were made before, and as the inducement for, Plaintiff's execution of the Therapy Agreement and authorization of the $9,527.00 in credit charges.

127. Plaintiff and the Class reasonably relied on Defendants' misrepresentations and concealments in deciding to enter into the Therapy Agreements and associated financing arrangements. But for Defendants' misrepresentations and concealments, Plaintiff and the Class would not have entered into those agreements or would not have entered into them on the same terms.

128. Plaintiff and the Class are entitled to rescission of the Therapy Agreements and associated financing arrangements, restitution of all amounts paid to Defendants,

compensatory damages, punitive damages, and consequential damages including financing costs.

## EIGHTH CLAIM FOR RELIEF

**Negligent Misrepresentation**
**(On behalf of Plaintiff and the Class)**

129. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

130. Defendants, in the course of their business, supplied false information for the guidance of Plaintiff and the Class in business or consumer transactions, namely the purchase of HCT/P injection services. The false information included, without limitation, the representations alleged above concerning the regenerative capabilities, FDA-approval status, scientific support, celebrity endorsement, expected outcomes, and follow-up care of the HCT/P program.

131. Defendants failed to exercise reasonable care in obtaining or communicating that information. Defendants are healthcare-marketing professionals and licensed clinicians; the FDA guidance and peer-reviewed literature were publicly available; and Defendants knew, or in the exercise of reasonable care should have known, that the information they were communicating to Plaintiff and the Class was false or misleading.

132. Plaintiff and the Class justifiably relied on the false information and suffered pecuniary loss thereby. Plaintiff and the Class are entitled to compensatory damages.

## NINTH CLAIM FOR RELIEF

**Breach of Express Warranty**
**(Tenn. Code Ann. § 47-2-313)**
**(On behalf of Plaintiff and the Class)**

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

133. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

134. The transaction at issue involved both goods and services. The "goods" component consisted of the HCT/P injectable product – the Wharton's Jelly umbilical-cord-derived product and the materials infused intravenously – which are movable, tangible things sold and transferred to Plaintiff and the Class within the meaning of Tenn. Code Ann. § 47-2-105. To the extent the predominant purpose of the transaction was the sale of those goods, with any services being incidental to their provision, Article 2 of Tennessee Uniform Commercial Code governs.

135. Defendants' marketing of their HCT/P injection products included repeated affirmations of fact and promises relating to the goods to be provided, including without limitation that the injections would regenerate new cells and cartilage, reverse chronic conditions, provide lasting pain relief, and cause consumers to feel like "a new man." Defendants also described the goods through the "Wharton's Jelly" product description, creating a warranty that the goods would conform to that description. Those affirmations and promises were, at least, part of the basis of the bargain by which Plaintiff and the Class agreed to purchase Defendants' HCT/P injection services.

136. Each such affirmation, promise, and description became part of the basis of the bargain and created an express warranty under Tenn. Code Ann. § 47-2-313 that the goods would conform thereto. Plaintiff and the Class would not have purchased, or paid the prices they paid, but for at least one of those affirmations, promises, or descriptions.

137. Defendants breached these express warranties. Defendants' HCT/P injections did not rebuild joint tissue, did not repair damaged tissue, did not allow Plaintiff's body to heal

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

itself, did not end his pain, did not reverse the effects of chronic disease, and did not regenerate cartilage.

138. Plaintiff gave notice of breach to Defendants through the filing of this Complaint and through earlier communications and correspondence. Plaintiff and the Class suffered injuries as a direct and proximate result of Defendants' breach, in amounts to be proven at trial.

## TENTH CLAIM FOR RELIEF

### Breach of Express Warranty – Services
### (On behalf of Plaintiff and the Elder Sub-Class)

139. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

140. This Count is pleaded in the alternative to the Ninth Claim. To the extent the predominant purpose of the transaction is determined to be the rendition of services — the consultation, administration of injections, and follow-up care — rather than the sale of goods, such that Article 2 of the Tennessee Uniform Commercial Code does not apply, Plaintiff and the Class assert this claim for breach of express warranty under the common law of Tennessee.

141. Defendants expressly warranted, through their affirmative representations described above, that their HCT/P injection program and the services rendered in connection with it would regenerate new cells and cartilage, reverse chronic conditions, provide lasting pain relief, cause consumers to feel like "a new man," and include a structured course of follow-up care at 48–72 hours, 2 weeks, 1 month, 2 months, and 3 months post-treatment.

142. These express warranties became part of the basis of the bargain. Plaintiff and the Class relied on them in agreeing to purchase Defendants' services and in paying the prices they paid.

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

143. Defendants breached these express warranties. The services did not produce the regenerative or pain-relief results warranted, and Defendants failed to provide the warranted follow-up care, performing only a fraction of the promised follow-up contacts.

144. Plaintiff gave notice of breach to Defendants through earlier communications and correspondence and through the filing of this Complaint. Plaintiff and the Class suffered injuries as a direct and proximate result of Defendants' breach, in amounts to be proven at trial.

## ELEVENTH CLAIM FOR RELIEF

**Financial Exploitation of an Elderly Adult**
**(Tenn. Code Ann. § 71-6-120)**
**(On behalf of Plaintiff and the Elder Sub-Class)**

145. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

146. Tenn. Code Ann. § 71-6-120(b)(1) provides that an adult who has suffered "theft of such person's or adult's money or property whether by fraud, deceit, coercion, or otherwise" has a private right of action for damages, attorneys' fees, costs, and punitive damages.

147. Plaintiff is an "elderly adult" within the meaning of Tenn. Code Ann. § 71-6-102, having attained the age of sixty (60) prior to the transactions at issue. Each member of the Elder Sub-Class is similarly an elderly adult.

148. Defendants, by means of the fraudulent and deceptive scheme alleged in detail above, knowingly obtained the money and property of Plaintiff and the Elder Sub-Class by deceit and false pretense, including by inducing the execution of Therapy Agreements through materially false marketing representations and concealment of material facts.

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

149. Each Defendant's acceptance of payments, processing of credit and financing transactions, and provision of services to elderly Class members — against the backdrop of the materially false and uncorrected marketing through which they had originally induced consent — constitutes a separate act of deceit-based theft of an elderly adult's property within the meaning of § 71-6-120.

150. Plaintiff and the Elder Sub-Class have been damaged by Defendants' conduct in the value of the property of which Defendants obtained control. Pursuant to Tenn. Code Ann. § 71-6-120(b)(1)–(2), Plaintiff and the Elder Sub-Class are entitled to compensatory damages, costs, reasonable attorneys' fees, and punitive damages.

## TWELFTH CLAIM FOR RELIEF

### Unjust Enrichment (In the Alternative)
### (On behalf of Plaintiff and the Class)

151. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein, as a claim pleaded in the alternative.

152. This Count is pleaded in the alternative to any claim of enforceable express contract. To the extent any agreement between Plaintiff or the Class and Defendants is held unenforceable, voidable, or void (including by reason of fraud in the inducement, violation of the HSSA, or unconscionability), Plaintiff and the Class assert this claim for unjust enrichment.

153. Plaintiff and the Class conferred a benefit on Defendants by paying for Defendants' HCT/P injection services. Defendants accepted and retained those payments.

154. Defendants' retention of those payments, in light of their materially false marketing, material omissions, and exploitation of elderly consumers, violates fundamental principles of justice, equity, and good conscience. Plaintiff and the Class are entitled to

restitution of all amounts paid to Defendants, disgorgement of all profits Defendants derived from the wrongful conduct, and a constructive trust over those amounts and profits.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Paul M. Fritts, individually and on behalf of the Class and the Elder Sub-Class, respectfully requests that this Court enter judgment in his and the Class's favor and against Defendants, and award the following relief:

A. Certifying the Class and the Elder Sub-Class as defined herein, appointing Plaintiff as Class Representative, and appointing Plaintiff's undersigned counsel as Class Counsel, pursuant to Federal Rule of Civil Procedure 23;

B. Declaring that Defendants' conduct violates the law as alleged herein;

C. Awarding compensatory damages in an amount to be proven at trial, including damages for economic loss, financing costs, and personal injury;

D. Awarding restitution and disgorgement of all amounts Defendants obtained from Plaintiff and the Class as a result of the conduct alleged herein;

E. Awarding rescission of the Therapy Agreement and any associated financing arrangements for Plaintiff and any Class Member, and ordering refunds of all amounts paid;

F. Imposing a constructive trust over all amounts Defendants obtained from Plaintiff and the Class as a result of the conduct alleged herein;

G. Awarding treble damages and attorneys' fees where available;

H. Awarding punitive damages, attorneys' fees, and costs to Plaintiff and the Elder Sub-Class where available; and

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

I. Awarding such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 15, 2026.

Respectfully submitted,

By: */s/ Cristina Perez Hesano*
Cristina Perez Hesano
**PEREZ LAW GROUP, PLLC**
7508 N. 58th Ave.,
Glendale, AZ 85301
Tel.: 602-838-7283
Fax: 602-612-6266
cperez@perezlawgroup.com

Brandon M. Wise (*pro hac vice* forthcoming)
Domenica M. Russo (*pro hac vice* forthcoming)
**PEIFFER WOLF CARR**
**KANE CONWAY & WISE, LLP**
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
Tel: (314) 833-4827
bwise@peifferwolf.com
drusso@peifferwolf.com

Clint Watson (*pro hac vice* forthcoming)
**THE LYON FIRM**
2754 Erie Avenue
Cincinnati, OH 45208
Tel: (513) 381-2333
cwatson@thelyonfirm.com

*Counsel for Plaintiff, the Class, and the Elder Sub-Class*

James E. Cecchi
Michael A. Innes
David G. Gilfillan
Jason Alperstein
**CARELLA BYRNE CECCHI**
**BRODY & AGNELLO, P.C.**

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301

5 Becker Farm Rd.
Roseland, NJ 07068
973-994-1700
jcecchi@carellabyrne.com
minnes@carellabyrne.com
dgilfillan@carellabyrne.com
jalperstein@carellabyrne.com

*Counsel for Plaintiff and the Putative Class*

PEREZ LAW GROUP, PLLC
7508 North 59th Avenue
Glendale, Arizona 85301